Filed 7/10/26  P. v. Herrera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F089648 |
| Plaintiff and Respondent, | (Super. Ct. No. VCF449693) |
| v. | |
| ISAIAH HERRERA, | OPINION |
| Defendant and Appellant. | |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Jesica Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

Defendant Isaiah Herrera contends on appeal that the sentence must be vacated and the matter remanded for resentencing because the trial court abused its discretion pursuant to Penal Code section 1385[1] when it declined to strike his prior strike. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On November 6, 2024, the Tulare County District Attorney filed a first amended information charging defendant with making criminal threats (§ 422, subd. (a); count 1); vandalism (§ 594, subd. (a); count 2); battery (§ 242; count 3); and possession of drug paraphernalia (Health & Saf. Code, § 11364; count 4). As to counts 1 and 2, it was further alleged defendant suffered two prior strike convictions (§§ 667, subd. (d), 1170.12, subd. (b)), two prior serious felony convictions (§ 667, subd. (a)(1)), and that he committed the charged offenses while released on bail or his own recognizance (§ 12022.1). The information also alleged multiple aggravating factors under California Rules of Court, rule 4.421.[2]

On November 6, 2024, defendant pled not guilty to all counts and denied the allegations.

On November 12, 2024, the trial court granted defendant's motion to bifurcate the prior conviction allegations and defendant waived his right to a jury trial on the matter.

On November 13, 2024, a jury found defendant guilty on all counts.

On November 14, 2024, in a bifurcated proceeding, the trial court found true all of the prior serious felony and strike allegations, as well as one of the bail allegations. The court found one aggravating factor true.

On January 30, 2024, the trial court held a sentencing hearing. Defendant moved the court to reduce the felony convictions to misdemeanor convictions and for the court

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

[2] All further rule references are to the California Rules of Court.

to exercise its discretion pursuant to section 1385 to strike the prior conviction findings and bail finding. One of the prior convictions alleged pursuant to sections 667, subdivision (a)(1) and 1170.12, subdivision (b), and one of the bail findings alleged pursuant to section 12022.1 were voided because the underlying prior conviction was determined to be a misdemeanor conviction. The court granted defendant's request to strike the remaining prior serious felony conviction. However, the court declined to strike the remaining prior strike conviction.

On March 21, 2025, the trial court held a continued sentencing hearing and sentenced defendant to a total term of five years four months, as follows: on count 1 (criminal threats), four years (the midterm, doubled pursuant to the Three Strikes law); and on count 2, one year four months (one-third the midterm, doubled pursuant to the Three Strikes law), consecutive.

On April 11, 2025, defendant filed a timely notice of appeal.

## FACTUAL SUMMARY

On December 12, 2023, defendant and his friend Cheryle F. had an argument. The next day, on December 13, 2023, Cheryle picked defendant up and drove them to a park so they could "smooth things over." Cheryle stated it was "awkward" between them. When they got to the park, Cheryle smoked marijuana but defendant did not want to, so she turned on her car and said she would take him home.

As she was driving, defendant was quiet but then became "extremely angry" and started screaming at her, causing her to be shocked and feel frantic. Defendant told her he would not exit her car and began hitting the dashboard. He then told her he was going to "take out everybody at [her] house." Cheryle took his statement seriously and was frightened by it. She testified she believed his statement because he on previous occasions put a knife against her throat, damaged her car, and had stolen her purse.

Cheryle testified she became lost while driving home because she was distracted by defendant's behavior and eventually parked her car in a cul-de-sac. Once she parked,

3.

defendant pushed her against the inside of the driver's side window, then exited the car, slamming the passenger door and continuing to scream and yell at her. He then walked to the back of the car, where he shattered the rear window as she reversed the car to try to make a U-turn to leave the cul-de-sac. Cheryle testified the cost of the window repair was $480.

Cheryle called the police and followed defendant in her car as he walked away so that she could tell them where he was located. While she was following him, he came back towards her and acted like he had "a gun in his—in his pants or something like that," and told her he would "clap" her, which she understood as slang that he would shoot her when coupled with the movement making it look like he had a gun. She did not see a weapon.

Visalia police officer Daniel McBride responded to the incident and found defendant hiding behind a parked car. McBride found defendant in possession of a smoking pipe and a quantity of methamphetamine.

*Defense*

Defendant's mother, Ines H., testified that Cheryle visited her residence approximately four days after the incident and told her she would "[not] go to court" if Ines paid her $900 for her broken car window.

## DISCUSSION

Defendant contends the sentence must be vacated and the matter remanded for resentencing because the trial court abused its discretion under section 1385 when it refused to strike defendant's 2020 criminal threats conviction. The People disagree. We agree with the People.

### A. *Background*

At the January 30, 2025 sentencing hearing, defense counsel argued the trial court should strike the prior strike at issue because defendant was not a "career criminal," as he spent most of his life until he was approximately 30 years old as a law-abiding citizen,

4.

suffered from mental health issues which had a close nexus with the underlying offenses, including a depressive disorder and irritability and agitation, and suffered "a lot of childhood trauma," as he witnessed violence in his youth, was the victim of abuse, had attempted suicide as a child, was exposed to drug use at a young age leading to his current drug use, and never received any drug or mental health treatment until he was in custody. Defense counsel also noted defendant's former employer submitted a letter stating that defendant was "warm" and "had a positive attitude towards the customers," and a letter from defendant's father stating defendant was "a different person" "when he's sober."

The prosecution argued against striking the prior strike, noting "one or more of [the] circumstances" the trial court was required to consider pursuant to section 1385, subdivision (c) "weigh[ed] greatly in favor of dismissing an enhancement unless the court finds dismissal of the enhancement would endanger public safety," defined as "a high likelihood that the enhancement would result in physical injury or serious danger to others." The prosecution noted multiple of defendant's prior offenses involved threats to victims while he held a knife. The prosecution also noted defendant's strike was "relatively fresh," and that, although he suffered significant trauma as a child and had mental health problems leading to the underlying offenses, that "it would not be in the interests of justice under that subsection [of section 1385], as I do believe [defendant] is a danger to the public as outlined by his criminal history."

The trial court denied defendant's motion to strike his prior strike, stating:

> "All right. So in 2018, he commits the strike prior, [section] 422, with the false imprisonment, assault with a deadly weapon, brandishing a weapon and misdemeanor battery.
>
> "Then in March of 2019 he was in possession of a weapon—a firearm, rather, when he wasn't allowed to be. He's also charged with resisting arrest in that case.

"In July of 2019 he committed a felony grand theft and in September of 2019 a felony possession of controlled substance for sale of resisting arrest again. He resolved all four of those cases at once in March of 2020, was sentenced to—if my math is correct, looks like five-year total state prison commitment between all those cases—six, yeah, six. He received a six-year sentence for those four felonies.

"It looks like he was out of custody by at least May of 2022 [be]cause then he was convicted of another misdemeanor offense for possession of drug paraphernalia in November of 2022.

"After that, in August of 2023, [he] picked up the second threats case in case [No.] 436597 where he received an indicated sentence of probation. There were certain terms that he complied with. He would have received favorable treatment, but he didn't show up for the sentencing; instead, he picked up the case we had the trial on more recently, case [No.] 449693.

"So the first question is would striking the strike be appropriate under the law as it relates here?

"There are a number of factors to consider. One is the prior criminal history, the nature of the prior, the nature of the current offense, the length of time in between those two and what has happened in between the strike prior conviction and new strike conviction.

"All things considered, I don't believe [defendant] falls outside the spirit of the Three Strikes [l]aw here. This strike is not that old. It was committed in 2018 followed by a number of criminal acts, including multiple felonies, including another [act of] criminal threats that will now become a misdemeanor and finally followed by another act of criminal threats for which he stands convicted that was committed in December of 2023.

"So you have about five years between the commission of those offenses, but that five years is full of other criminal activity and, most concerningly, he's back for the same type of criminal activity in this new case, threatening people again, plus having the threats case that came up earlier in 2023.

"He was in court in [case No.] 426597 for a felony [section] 422 with a strike prior because of the 2018 threats. He was given a great opportunity to have that strike stricken and receive probation, and he didn't come to court; instead, he got in trouble again for this new threats case.

"So given all of that, I don't think there's any way for the court to reasonably conclude that he doesn't hit the spirit of the Three Strikes [l]aw. I think he's squarely within that statutory scheme. So I think it would be inappropriate for the court to strike his prior based on the nature of the strike prior, the nature of the current offense, all the crimes he committed in the interim, to include threats of violence, acts of violence, possession of a weapon, firearm. So the request to strike the strike prior is denied. [¶] … [¶]

"The defense has pointed to evidence that … defendant suffers from a mental illness that's borne out by the documents that are attached to some of the defense moving papers here. He's treated with medication per that document.

"The court is mandated to give great weight to that type of evidence which I will do under that section. The question is then the public safety argument raised by the People here.

"I think the question properly framed is whether it would endanger public safety to, for example, impose, you know, a five-year, or whatever the case may be, prison sentence versus a nine or [10]-year prison sentence. I think that's a fairly difficult hurdle to clear.

"I think there's no disputing [defendant] does pose a danger, and it's appropriate, therefore, to not strike the strike and place him on probation and sentence him to prison which I'm going to do .…"

***Law***

In *Romero*,[3] our Supreme Court "explained that the 'power to dismiss an action,' … 'in furtherance of justice' pursuant to … section 1385[, subdivision ](a), 'includes the lesser power to strike … allegations' or vacate findings 'relevant to sentencing, such as the allegation' or finding 'that a defendant has prior felony convictions.' " (*People v. Williams* (1998) 17 Cal.4th 148, 151 (*Williams*).)

The intent of the Three Strikes law is " 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' " (*People v. Strong* (2001) 87 Cal.App.4th 328,

---

**3**     *People v. Superior Court* (*Romero*) (1966) 13 Cal.4th 497.

7.

337.)  The Three Strikes law establishes a sentencing norm for longer sentences for repeat offenders and "carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision" to strike a prior strike conviction.  (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*).)  However, "no similar requirement applies when a court declines to strike a prior [strike conviction]."  (*In re Large* (2007) 41 Cal.4th 538, 550.)  "In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper."  (*Carmony*, at p. 378.)

The lower court must determine "whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*Williams*, *supra*, 17 Cal.4th at p. 161; see *People v. Strong*, *supra*, 87 Cal.App.4th at p. 336, disapproved on another ground in *People v. Dain* (2025) 18 Cal.5th 246, 265, fn. 5.  [The "spirit" of a law refers to that law's general meaning or purpose].)  "[T]he sentence imposed by the trial court is itself a factor" when deciding a defendant's prospects for committing future crimes because the defendant will have fewer opportunities to commit crimes while incarcerated.  (*People v. Gaston* (1999) 74 Cal.App.4th 310, 315, disapproved on another ground in *People v. Dain*, *supra*, 18 Cal.5th at p. 265 fn. 5.)  Also, the extent of a defendant's criminal record is "undeniably relevant" to the factors outlined in *Williams*.  (*People v. Garcia* (1999) 20 Cal.4th 490, 498–499, 501–502.)  "[T]he presence of mitigating evidence is not enough to render the trial court's decision an abuse of discretion."  (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170.)

We review an order on a *Romero* motion for an abuse of discretion.  (*Williams*, *supra*, 17 Cal.4th at p. 162.)  This review is "guided by two fundamental precepts."

8.

(*Carmony*, *supra*, 33 Cal.4th at p. 376.) First, the party challenging the sentence has the burden to clearly demonstrate the sentencing decision was arbitrary or irrational. (*Ibid*.) Otherwise, we presume the trial court acted to achieve legitimate sentencing objectives and will not set aside its discretionary determination to impose a particular sentence. (*Id*. at pp. 376–377.) Second, we will not reverse a sentencing decision merely because reasonable people may disagree. (*Id*. at p. 377.) "Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid*.) Because "extraordinary circumstances" must be present for a career criminal to be deemed outside the spirit of the Three Strikes law, even more extraordinary circumstances must be present for a reviewing court to find that no reasonable people could disagree that such a person is outside the spirit of the law. (*Id*. at p. 378.) However, discretion is abused if a court dismisses a prior strike conviction for judicial convenience, to relieve court congestion, or simply because the defendant pleaded guilty. (*Romero*, *supra*, 13 Cal.4th at p. 531.) Additionally, considering the defendant's criminal history alone "is 'incompatible with the very nature of sentencing discretion ….' " (*In re Saldana* (1997) 57 Cal.App.4th 620, 626; *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 981.) It is the defendant's burden to provide the court with evidence to support his *Romero* motion. (*People v. Lee* (2008) 161 Cal.App.4th 124, 129.)

### C.    *Analysis*

Here, the trial court did not abuse its discretion when it declined to strike defendant's prior strike pursuant to section 1385.

Here, the trial court discussed its discretion to strike defendant's prior strike, and the factors it was required to consider, including the nature of defendant's present offense, criminal record, background, character and prospects. It also reviewed defendant's mitigation memorandum and supporting documents and heard from the prosecution and defense counsel. It then discussed its consideration of defendant's

criminal history, with the commission of numerous offenses after the prior strike conviction, including multiple felonies concerning the same type of criminal activity; that he was in the middle of proceedings on another felony criminal threats offense when he committed the instant offense; the serious nature of the instant offense; and his failure to remain free from criminal activity for any significant period of time since his prior strike conviction in 2020. The court also explicitly discussed defendant's adverse childhood, mental health and drug use issues. However, it explained that, balancing these factors, defendant does not fall outside the spirit of the Three Strikes law, as the danger he presents to public safety outweighs these mitigating factors. The court's consideration of the proper factors, along with the presumption that denial of a *Romero* motion is a proper exercise of discretion unless the circumstances are so extraordinary that no reasonable person could disagree that defendant falls outside the spirit of the law, convince us that the court's denial of defendant's motion was not an abuse of discretion. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.) As we explain below, defendant's arguments to the contrary do not persuade us.

Defendant contends the trial court failed to consider that defendant was crime free for most of his life, until his first conviction at age 33, resulting in the prior strike at issue here. However, the court noted that defendant's prior strike conviction was only approximately five years old, and that he had not remained substantially free from either prison or supervision for any period of time that would lead the court to believe that he fell outside the scheme of the Three Strikes law, as he also had "a number of criminal acts, including multiple felonies, including another criminal threats that will now become a misdemeanor and finally followed by another act of criminal threats for which he stands convicted that was committed in December of 2023," between his prior strike conviction and the current offense. The court also noted that his offenses included repeated criminal threats and defendant was awaiting sentencing in another case when he committed the current offenses. Thus, while his first offense and prior strike occurred approximately

10.

five years before his commission of the current offenses, the court clearly noted his continuous criminal history since then.

Defendant also argues that his current offenses are "ordinary" in nature, and that while he made verbal threats against Cheryle's life, he did not act upon them or use a weapon while making them, and that, while he committed battery against Cheryle, he did not injure her while doing so. Here, the trial court stated during the bifurcated proceeding on the prior convictions, "[T]he part I'm struggling with is the question of whether the conduct in this case is distinctively worse than that posed by an ordinary commission of the underlying crime. [¶] So far as there's an ordinary threat to someone's life or their family's life, I don't know how this is distinctively worse." However, the court also noted multiple times when considering defendant's *Romero* motion that it took into account that the nature of the current offenses, based on his threats to Cheryle, were the same type of criminal activity as his prior offenses, when weighing the factors required to determine whether defendant fell outside the spirit of the Three Strikes law.

Defendant also contends that the trial court did not "fully consider" the mitigating factors. He argues the court failed to consider that defendant had a difficult childhood, mental health issues, and substance abuse issues. However, the court made clear it considered defendant's individual background and character. It expressly stated it had read defendant's mitigation memorandum and supporting documents and had considered his mental health issues, and the court heard defense counsel's argument in which she discussed defendant's adverse childhood, substance abuse issues and mental health issues. It is clear from the moving papers, as well as the court's statement at the hearing, that the court was well aware of, and considered the effects of, defendant's background. Further, although defendant points to mitigating evidence, such as his mental health issues, childhood trauma, and substance abuse issues, the presence of this mitigating evidence is not enough to render the court's decision an abuse of discretion. (See *People*

*v. Bernal*, *supra*, 42 Cal.App.4th at p. 1170.)  In *People v. Martinez* (1999) 71 Cal.App.4th 1502, the defendant had a similarly adverse childhood.  However, the *Martinez* court found that, while the "[d]efendant's upbringing and learning disabilities are unfortunate, … the law still holds such an individual responsible for his or her behavior." (*Id*. at p. 1511.)  The same is true here.  The court acted within the applicable standards when it declined to find that defendant fell outside the spirit of the Three Strikes law, despite defendant's adverse childhood, substance abuse issues, and mental health issues.

Further discussion by the trial court of defendant's background, character and prospects was unnecessary, as the court was not obligated to address every aspect of its decision to deny defendant's *Romero* motion in its statement.  (See *In re Large*, *supra*, 41 Cal.4th at p. 550; see also *People v. Salazar* (2022) 80 Cal.App.5th 453, 461 ["There is a presumption that the trial court considered all relevant factors, even if it does not mention them all"].)

Here, the trial court's decision was not "so irrational or arbitrary that no reasonable person could agree with it."  (*Carmony*, *supra*, 33 Cal.4th at p. 377.) " '[W]here the record 'demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' " (*Id*. at p. 378.)  Accordingly, the court's reliance on the nature of the current offenses, criminal history, background, character and prospects, along with the presumption that denial of a *Romero* motion is a proper exercise of discretion, convince us that, when looking at the entire picture, the court's denial of defendant's motion was not an abuse of discretion. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.)

## DISPOSITION

The judgment is affirmed.